# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| **WILLIAM A. MCKINNEY,** | ) |
| | ) |
|    **Plaintiff,** | ) |
| | ) |
| v. | )   **Case No.: 3:08-CV-194-VEH** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner,** | ) |
| **Social Security Administration,** | ) |
| | ) |
|    **Defendant.** | ) |

## MEMORANDUM OF OPINION

**I.     INTRODUCTION**

The plaintiff, William A. McKinney, "McKinney," appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  McKinney has timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. § 1383(c)(3).

The court has reviewed the entire record in this case and is of the opinion that the Commissioner's decision is not supported by substantial evidence.  Accordingly

the case is due to be **REMANDED**.

## II. FACTUAL HISTORY

McKinney filed an application for DIB and SSI on November 30, 2004. (TR 18). He alleged onset of disability beginning February 10, 2003. (TR 18). The claims were initially denied on April 19, 2005, after which, McKinney timely filed a request for a hearing. (TR 18). McKinney participated in a hearing before an ALJ on June 21, 2006. (TR 18). On December 19, 2006, the ALJ issued a decision denying benefits. (TR 26). McKinney requested review of the hearing decision, which the Appeals Council denied. (TR 5-7). McKinney then sought judicial review of the decision in this Court, filing a complaint (Doc. 1) on February 4, 2008. McKinney argues that the ALJ's findings were not supported by substantial evidence. Because McKinney's challenge alleges a lack of substantial evidence, it is necessary to review the facts in this case.

McKinney was 43 years old at the time of his disabling event. (TR 24). He has a high school education and has held several jobs in the past, including manager of a grocery store, desk clerk at a lodge, auditor, and reservation clerk. (TR 24). McKinney stopped working after he injured his knee while jumping from his porch. (TR 117). He now claims that he is unable to work because of back, neck, and knee problems, fibromyalgia, and depression, as well as trembling in his arms. (TR 95,

117, 123, 211, 214, 339, 342).

Shortly after his disabling event, McKinney sought treatment from Dr. E. Lyle Cain. (TR 20). Dr. Cain provided arthroscopic surgery and prescribed physical therapy, after which McKinney claimed that he was "98 percent better." (TR 21). However, he still complained of foot pain, so Dr. Cain referred McKinney to Dr. John S. Kirchner. (TR 21).

Dr. Kirchner diagnosed McKinney with central overload syndrome and performed a shortening osteotomy of the plaintiff's metatarsal, after which McKinney suffered only slight soreness in his foot. (TR 21).

Later in March, 2004, McKinney returned to Dr. Cain, reporting new symptoms–diffuse musculoskeletal pain. (TR 21). Although he reported pain "everywhere," Dr. Cain's diagnostic tests revealed no abnormalities, and a preliminary diagnosis of fibromyalgia was provided. (TR 21). Although McKinney had received relief from prescribed steroids in the past, he rejected treatment and decided to apply for disability. (TR 21).

In November, 2004, McKinney saw Dr. David R. Longmire for a neurosurgical consultation. (TR 21). Dr. Longmire performed a series of tests on McKinney's back; these tests demonstrated only mild conditions that lacked significant neural impingement. (TR 21). Dr. Longmire also noted that McKinney suffered from

"shaking" and documented pain in his limbs.  TR (212, 214, 216-17, 227).

In March, 2005, Dr. Clarke Woodfin performed a physical exam on McKinney. (TR 21).  Dr. Woodfin found that McKinney did not act like someone with low back pain or a stiff neck.  (TR 21).  He also noted that McKinney had full range of motion in his shoulders and could move all other joints without significant discomfort.  (TR 21).

Also at this time, McKinney sought treatment from a local mental health center for depression.  (TR 21).  McKinney was diagnosed with major depressive disorder, history of anxiety disorder, and personality disorder.  (TR 21-22).  After this diagnosis, McKinney received no treatment for nearly five months, but after this hiatus, he was evaluated by Dr. Georgie K Stanford.  (TR 22).  Dr. Stanford noted that McKinney had a life-long history with depression and panic attacks.  (TR 22).

Following this evaluation, the ALJ ordered a psychological evaluation of McKinney, which was performed by a consulting doctor, Barry Wood.  Dr. Wood indicated that McKinney might be exaggerating some of his symptoms.  (TR 22). He also found that while McKinney's vocations prospects and social skills might be affected by his condition, he was not precluded from functioning effectively.  (TR 22).  Dr. Wood also summarized some of McKinney's physical conditions, which included a "bilateral hand tremor."  (TR 323).

4

Based on the above evidence, the ALJ concluded that McKinney was not under a disability as defined by the Social Security Act and its accompanying regulations. Having established the operative facts, it is now necessary to address the substance of McKinney's appeal.

## III.   STANDARD OF REVIEW

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S.

607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

**IV.   ANALYSIS**

In reviewing the decision of an ALJ in a social security case, the court is limited to determining whether the correct legal standards were applied, and whether the ALJ's decision was supported by "substantial evidence." *See Lewis v. Callahan*, 125 F.3d 1436, 1429 (11th Cir. 1997).

A.   <u>Legal Standards Applied</u>

The ALJ used the appropriate legal standards in deciding McKinney's case. First, to qualify for benefits, a claimant must suffer from an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).

"Physical or mental impairment" is defined by the Social Security Act as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Taking guidance from the statutory definitions, the applicable regulations provide for a five-step process by which an ALJ should evaluate the claimant's disability. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a), 416.920(a). If he is, the claimant is not disabled and the evaluation stops. *Id.* If he is not, the Commissioner next considers the effect of all of his physical and mental impairments combined. *Id.* These impairments must be severe and must meet the duration requirements before a claimant will be found to be disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). The decision depends on the medical evidence in the record. If the claimant's impairments are not severe, the analysis stops. *Id.* Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments fall within this category, he will be found disabled

without further consideration. *Id.* If they do not, the analysis proceeds to the fourth step.

The fourth step requires determination of whether the claimant's impairments prevent him from returning to his past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). As to this criterion, the regulation states:

> If we cannot make a decision based on your current work activity alone, and you have a severe impairment(s), we then review your residual functional capacity and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will find that you are not disabled.
> *Id.*

Upon determination that the claimant cannot do any of the work he has done in the past, step five requires the court to consider the claimant's residual functional capacity, as well as the claimant's age, education, and past work experience in order to determine if he can do other work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

In the instant case, the ALJ accurately followed the controlling legal framework. First, he found that McKinney had not been engaged in substantial gainful activity since the onset date. (TR 20). Proceeding to the next step in the analysis, the ALJ found that McKinney had the following severe impairments: lumbar and cervical degenerative disc disease, degenerative joint disease of his left knee, status post left fibular osteotomy, and depression. (TR 20). In the third step of the

analysis, the ALJ determined that McKinney did not have an impairment that met one of the listed impairments in Appendix I of 20 CFR Part 404, Subpart P. (TR 22). Next, the ALJ concluded that McKinney had the residual functional capacity (RFC) to perform light work. (TR 22). In the fourth step of the analysis, the ALJ concluded that McKinney was unable to perform past relevant work, in light of his RFC. (TR 22). Finally, the ALJ found, in step five of the analysis, that McKinney could perform several jobs in the regional and national economy. (TR 25). Accordingly, the ALJ found that McKinney did not suffer from a "disability." (TR 25).

In all aspects of his analysis, the ALJ followed the proper legal framework. McKinney does not challenge this aspect of the ALJ's decision. Instead, he challenges the ALJ's decision on the ground that it was not supported by substantial evidence. The court now addresses this challenge.

B.   Supported by Substantial Evidence

McKinney argues that the ALJ's decision is due to be remanded on substantial evidence grounds in two respects.[1] First, he argues that the ALJ erred by failing to consider the disabling effect of his bilateral hand tremors. (Doc. 9 at 10-12). Next, he argues that the ALJ improperly discredited the opinions of his treating physicians.

---

[1] Although McKinney's initial brief alleged three grounds to challenge the decision (Doc. 9), subsequently in his reply brief, McKinney abandoned one of his arguments, acknowledging that he had been mistaken in this challenge. (Doc. 12).

(Doc. 9 at 15-19). Because this case is due to be remanded on McKinney's first ground for challenging the decision, the court need not address McKinney's second ground.

In reviewing the ALJ's findings, this Court must affirm the opinion of the administrative court unless the ALJ's decision lacked substantial evidence. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir.2002). "Substantial evidence must do more than create a suspicion of the existence of the fact to be established." *Id*. The evidence must be "relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Ingram v. Commissioner of Social Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983)). "Even if the evidence preponderates against the [Commissioner]'s factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Ingram*, 496 F.3d at 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "[W]ithin this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable, and supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983) (internal quotations and citations omitted).

An ALJ's decision is not supported by substantial evidence when it fails to

consider the each and every impairment alleged by the claimant. *See Gibson v. Heckler*, 779 F.2d 619, 622 (11th Cir. 1986). "Clearly, the ALJ must consider every impairment alleged." *Id.* at 623. The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker*, 662 F.2d 731, 735-36 (11th Cir. 1981). Failure to consider all of the impairments alleged is a reversible error. *Gibson*, 779 F.2d at 623.

The ALJ must also consider the combined effect of all impairments, even if an impairment by itself is not disabling. "The Act and pertinent case law require that the ALJ consider each impairment, as well as the combined effect of all a claimant's impairments. *Morrison v. Barnhart*, 278 F. Supp. 2d 1331, 1336 (M.D. Fla. 2003) (citing 42 U.S.C. § 423(d)(2)(B) ("In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."). "When 'a claimant has alleged a multitude of impairments, a claim for social security benefits may lie even though none of the impairments, considered individually, is disabling.' Furthermore, it is the duty of the [ALJ] to make specific and well-articulated findings as to the effect of the

combination of impairments and to decide whether the combined impairments cause the claimant to be disabled." *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987) (quoting *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984)).

The administrative record is filled with references to McKinney's bilateral hand tremors. His doctors noted the condition. (TR 123, 211, 214, 268). The Commissioner's own consultive physician addressed the condition. (TR 323). McKinney cited the effects of his condition in Physical Activities Questionnaires. (TR 95, 102). He also testified about his hand tremors at his hearing. (TR 339-340, 342). It is not, however, specifically mentioned on his application for benefits.

When dealing with similar circumstances in the past, some courts have recognized that "[t]he administrative law judge is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir.1996) (quoting *Brockman v. Sullivan*, 987 F.2d 1344, 1348 (8th Cir.1993)); *see also Street v. Barnhart*, No. 04-15077 2005 WL 1462402 at *6 (11th Cir. May 18, 2005) (finding that an ALJ need not consider an impairment that has not been raised on an application, is not supported by medical evidence, and is not testified to) (citing *Pena*, 76 F.3d at 909)). In this case, however, the rationale underlying *Street* and *Pena* does not apply. While McKinney's hand tremors do not appear on his initial application

for disability benefits (TR 59-62), McKinney did complain of his condition to doctors, the Commissioner's own consulting physician addressed the condition, and McKinney testified to it at his hearing. Both *Street* and *Pena* stand for the proposition that an ALJ does not have to consider every feasible condition, including those that are undocumented in the record. Such a situation does not exist here. The ALJ knew about the allegations and did not address them with a specific finding in his decision. Therefore, the court has no choice but to remand the decision for further consideration, since the ALJ must consider "every impairment alleged." *Gibson*, 779 F.2d at 623.

In an effort to support the ALJ's decision, the Commissioner argues that "it is the functional limitations imposed by the condition and not the mere diagnosis that determines disability." (Doc. 11 at 11). To buttress this argument, the Commissioner cites the following passage from *McCruter v. Bowen*, 791 F.2d 1544 (11th Cir. 1986):

> In other words, the "severity" of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality. For example, suppose a person's job consists in selecting by means of a computer a set of stocks with appropriate price to earnings ratio for inclusion in a market letter to investors. Suppose then that by reason of an automobile accident the financial forecaster has both legs amputated, but can still operate the computer. If medical factors alone are considered, this would certainly be a "severe" impairment; but when vocational factors are taken into account, the victim can still

> perform the work pertaining to his job and can not be considered as having a "disability" qualifying him for benefits.
> *Id.* at 1547.

The Commissioner's argument is not persuasive. While it is true that disability is determined by functional limitations and not diagnosis alone, the problem is that the current record does not indicate that the ALJ considered McKinney's hand tremors at all, let alone their effect on his functional limitations, in making the decision. In other words, since the ALJ never discussed McKinney's hand tremors, the reviewing court has no means to determine whether the court found the condition was not severe, or whether it affected his RFC. Without any mention of this documented impairment in the decision, the court cannot conclude that the ALJ's finding was supported by substantial evidence.

It may be that McKinney's impairment is not severe, or the impairment, although severe, may not affect his RFC. If this is the case, the presiding ALJ should, on remand, make a specific finding as to both this impairment and the aggregate effect of all impairments.

Accordingly, this case is due to be **REMANDED** for consideration of the case consistent with the instructions set forth in this opinion. An Order consistent with this Memorandum of Opinion will be entered.

**DONE** and **ORDERED** this the 26th day of August, 2008.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge